## Mullins v. Commonwealth.

Oct. 13, 1942.

590

Burke & Sanders for appellant.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Cammack—Affirming.

The appellant, Dewey Mullins, and several others, went in a truck to the Elkhorn voting precinct in Pike County on November 4, 1941. On the return trip most of the parties, including some of the women, became intoxicated. A quarrel developed, in which appellant, his wife, and Lawrence Sims were involved, and which ended when the appellant shot and killed Sims. Mullins was charged with murder, and upon his trial he was given 21 years in the penitentiary. He is urging that the judgment be reversed on the grounds that (1) he was in such a mental and physical condition during his trial as not to know what was going on; and (2) seven of his witnesses were unable to reach court in time to testify in his behalf.

It is obvious from the grounds urged for reversal that it is unnecessary to discuss the circumstances surrounding the killing.

It is argued that the case should have been continued because of Mullins' physical and mental condition during the trial. A motion was made for a continuance, but this was based on the absence of witnesses. No question was raised as to Mullins' being unable to proceed with the trial when it began or on the second day. Mullins' trouble was that he was drunk, or partially so, the first day of his trial. He set forth in his affidavit in support of his motion and grounds for a new trial that Jim Hackney, one of his witnesses, whom he had erroneously considered to be his friend, induced him to take a drink of whiskey shortly before his trial, and that the whiskey contained some drug or substance which rendered him incapable of knowing what was going on. There was filed an affidavit of his attorney to the general effect that Mullins was in a stupor, drunk or under the influence of some powerful drug, and that he did not know what he was doing during his trial. The court ordered an oral hearing on this ground and it developed on that hearing that Hackney denied giving Mullins a drink of whiskey just before the trial. A

deputy jailer testified that Mullins had about a half pint of whiskey on him after his trial was concluded the first day, and the jailer testified that he appeared to be somewhat drunk at that time. The trial started late in the afternoon and only two of the Commonwealth's witnesses were heard on that day. It was concluded the next morning. The court's order overruling the motion and grounds for a new trial sets forth that it was the judge's opinion from the evidence offered on the point in question, and from his own observation of Mullins, that there was nothing wrong with him on the afternoon his trial started, except that he was intoxicated by the voluntary use of whiskey during the day. This order sets forth that the judge did not observe that Mullins was intoxicated until after the trial had started, but that he did not appear to be so intoxicated as not to know what he was doing and that his intoxication did not affect his walking. The judge said that Mullins appeared to be all right the next day. The record does not support the charge that he was given a drink of whiskey which contained some powerful drug. Complaint is made also as to the threat of the court to place Mullins in the custody of the jailer because of his conduct on the first day of his trial, but the aforementioned order shows that this threat related to Mullins' failure to return to the court room for some three or four minutes after he had been consulting with his attorney in another room. Mullins voluntarily placed himself under the influence of liquor the day his trial began, so he is in no position to complain of his alleged failure to know what was going on at that time. Furthermore, it was not until he filed his motion and grounds for a new trial that he raised the question.

Seven of Mullins' witnesses did not reach Pikeville on the second day of his trial in time to testify in his behalf. Mullins said that these parties returned to their homes, some 25 miles from Pikeville, when court adjourned on the first day of his trial, and the truck in which they were returning the next morning broke down, thereby causing them to be unavoidably delayed in reaching Pikeville. One of the absent witnesses filed an affidavit to the same effect. The record shows that it was stipulated that two of the absent witnesses who saw the killing would have testified to the same facts as testified to by Lizzie Mullins, wife of the appellant. As to these two witnesses the court told the jury:

"* * * I will instruct you to consider that as their evidence just the same as if they were here and testifying to the same facts testified to by Lizzie Mullins who testified here this morning."

Mullins said that the other five witnesses had been subpoenaed for the purpose of contradicting the evidence of two witnesses for the Commonwealth as to what occurred at the time of the shooting. Apparently, counsel for Mullins did not feel that the testimony of these five witnesses would add much to his case, because there was no motion for a continuance respecting them, nor was any reference made in the stipulation as to how they would testify. We fail to see on the whole case how the appellant's substantial rights were prejudiced. He got his theory of the killing before the jury and we get the impression from the whole record that he had a fair and impartial trial.

Wherefore, it is our conclusion that the judgment should be and it is affirmed.